**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amy Diane Torres, | No. CV-16-02563-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin,<br>Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Amy Diane Torres seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. For the reasons set forth below, the Court will vacate the Commissioner's decision and remand for a new hearing.

## I.    Background.

Plaintiff is a 31 year-old female who previously worked as a customer complaint clerk, account clerk, and cashier. Doc. 11 at 3; A.R. 27. On April 17 and 20, 2013, Plaintiff applied for disability insurance benefits and supplemental security income, respectively. A.R. 19. Plaintiff has since amended her application to allege that her disability began on May 6, 2013. A.R. 19. Plaintiff's claim was initially denied on August 7, 2013, and upon reconsideration on December 4, 2013. A.R. 19. On January 13, 2014, Plaintiff filed a written request for a hearing. A.R. 19. Plaintiff appeared with her attorney at a hearing on October 24, 2014. A.R. 19. Plaintiff,

1     vocational expert Sandra K. Richter, and others testified.  A.R. 19.  On December 19,

2     2014, ALJ Thomas Cheffins issued a decision that Plaintiff was not disabled within the

3     meaning of the Social Security Act.  A.R. 27.  Plaintiff sought review with the Appeals

4     Council, which denied her request for review (A.R. 1-4), making the ALJ's decision the

5     Commissioner's final decision.

6     **II.     Legal Standard.**

7          The district court reviews only those issues raised by the party challenging the

8     ALJ's decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The court

9     may set aside the Commissioner's disability determination only if the determination is

10    not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d

11    625, 630 (9th Cir. 2007).  Substantial evidence is more than a scintilla, less than a

12    preponderance, and relevant evidence that a reasonable person might accept as adequate

13    to support a conclusion considering the record as a whole.  *Id.*  In determining whether

14    substantial evidence supports a decision, the court must consider the record as a whole

15    and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.*

16    (internal citations and quotation marks omitted).  As a general rule, "[w]here the evidence

17    is susceptible to more than one rational interpretation, one of which supports the ALJ's

18    decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954

19    (9th Cir. 2002) (citations omitted).  Harmless error principles apply in the Social Security

20    context.  *Molina v. Astrue,* 674 F.3d 1104, 1115 (9th Cir. 2012).  An error is harmless if

21    there remains substantial evidence supporting the ALJ's decision and the error does not

22    affect the ultimate nondisability determination. *Id.*

23         The ALJ is responsible for resolving conflicts in medical testimony, determining

24    credibility, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.

25    1995).  In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for

26    drawing specific and legitimate inferences from the ALJ's opinion."  *Magallanes v.*

27    *Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

28    //

**III.    The ALJ's Five-Step Evaluation Process.**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2016, and that she has not engaged in substantial gainful activity since April 2013. A.R. 21. At step two, the ALJ found that Plaintiff has the following severe impairments: migraines, cerebral tumor status post shunt and removal, status post nerve stimulator, obesity and benign intracranial hypertension. A.R. 22. While the ALJ acknowledged that the record contains evidence of vision problems, he found that this condition did not impose more than minimal limitations on the claimant and thus is not a severe impairment. A.R. 22. At step three, the ALJ

determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. A.R. 22. At step four, the ALJ found that Plaintiff has the RFC to perform sedentary work, but can never climb ladders, ropes, or scaffolds, and can occasionally balance. A.R. 23. Plaintiff must also avoid hazardous machinery (except motor vehicles), concentrated exposure to extreme lighting and excessive noise, and exposure to unprotected heights, open bodies of water, and open flames. A.R. 23. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, she is capable of performing past relevant work as a customer complaint clerk, account clerk, and cashier. A.R. 27.

## IV.    Analysis.

Plaintiff argues that the ALJ made an erroneous credibility determination, medical opinion evaluation, and other-source opinion evaluations. Doc. 11.

### A.    Weighing of Medical Source Evidence.

Plaintiff argues that the ALJ improperly weighed the medical opinion of Eric Eross, M.D. Doc. 11 at 22.

#### 1.    Legal Standard.

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). But the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions. § 404.1527(a)(2), (c).

In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining

physician. *See Andrews*, 53 F.3d at 1040–41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence).

If a treating or examining physician's medical opinion is not contradicted by another doctor, the opinion can be rejected only for clear and convincing reasons. *Lester*, 81 F.3d at 830 (citation omitted). Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole[ ] or by objective medical findings," *Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004), or if there are significant discrepancies between the physician's opinion and her clinical records, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

When a treating or examining physician's opinion is contradicted by another doctor, it can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citation omitted). To satisfy this requirement, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). Under either standard, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### 2. Dr. Eross.

Dr. Eross has been Plaintiff's treating physician since 2012. Doc. 11 at 22. There does not appear to be a medical source opinion from Dr. Eross in the record, nor does Plaintiff contend that he completed such an opinion. Dr. Eross's treatment notes are in the record, however, and consistently contain this statement: "At times during exacerbations, the patient's condition can result in severe disability." A.R. 342, 345, 348, 355, 433, 439, 442, 576, 596, 609, 677. The treatment notes do not otherwise appear to

express any opinion as to whether Plaintiff is disabled or what limitations she may experience. The ALJ briefly referenced Dr. Eross's diagnosis of Plaintiff's headaches and related treatment, but failed to mention or discuss the statement identified above. Plaintiff argues that the ALJ erred by doing so. Doc. 11 at 22.

Plaintiff does not cite any case law to show that an ALJ must review and discuss every opinion in every page of every medical document in the record. Such a rule would place an unreasonable burden on ALJs – many social security records contain thousands of pages. Dr. Eross's opinion that Plaintiff may at times experience a severe disability is one notation among many, and there is no evidence in the hearing transcript or broader record that it was explicitly brought to the ALJ's attention. In fact, Plaintiff's counsel relied on the opinion from "treating source Dr. Jensen" and her staff at the hearing, but made no reference to any other medical source opinion. A.R. 60. Thus, while an ALJ must provide legally sufficient reasons for rejecting a medical source opinion, Plaintiff has not shown that he must do so for every comment or observation contained in the medical records. The Court cannot conclude that the ALJ erred by failing to address Dr. Eross's statement.

## B. Weighing of Other Source Opinions.

Plaintiff argues that the ALJ improperly rejected the opinions of her treating physician's assistant, Stephanie Azevedo, and her parents, Stephanie and David Webster. Doc. 11 at 18.

### 1. Legal Standard.

The Social Security Regulations differentiate between "acceptable" medical sources, which include licensed physicians, psychologists, optometrists, and podiatrists, and "other" sources, which include nurse-practitioners, physician's assistants, public and private social welfare agency personnel, and family. 20 C.F.R. § 404.1513; SSR 06-03p.[1]

---

[1] The Social Security Regulations have recently been amended so that, among others things, advanced practice registered nurses and physician's assistants will be considered acceptable medical sources for claims brought after March 27, 2017. *See* 20 C.F.R. § 404.1502(a). Because Plaintiff filed her claim before this date, the amended version of the regulations does not apply here.

An ALJ may discount an "other" source if the ALJ provides "germane" reasons. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *Molina*, 674 F.3d at 1114. The Ninth Circuit has found it sufficient if the "ALJ at least noted arguably germane reasons for dismissing [other source] testimony, even if he did not clearly link his determination to those reasons." *Lewis*, 236 F.3d at 512. Germane reasons will only be legally sufficient, however, if they are supported by substantial evidence in the record. *See Sullivan v. Colvin*, 588 F. App'x 725, 726 (9th Cir. 2014); *Carter v. Astrue*, 472 F. App'x 550, 553 (9th Cir. 2012); *Gilbert v. Comm'r Soc. Sec. Admin.*, No. 6:14-CV-02035-MA, 2016 WL 126370, at *6 (D. Or. Jan. 11, 2016); *Nguyen v. Colvin*, 95 F. Supp. 3d 1286, 1297 (D. Or. 2015).

## 2. PA Azevedo.

Stephanie Azevedo is a physician's assistant at Your Family Medicine, and has treated Plaintiff as a primary care provider. Doc. 11 at 20. Azevedo completed a questionnaire in October 2014, stating that Plaintiff has been diagnosed with pseudotumor cerebri, benign intracranial hypertension, occipital neuralgia, and insomnia. A.R. 641-42. Azevedo concluded that Plaintiff's complaints of daily migraine-like headaches are medically credible and reasonable. A.R. 641. She also found medically credible and reasonable Plaintiff's report that her headaches vary in intensity and that, on the average of three to four days per week, they are severe enough to require significant restriction of activity and recuperative measures. A.R. 641. Azevedo further explained, however, that Plaintiff has undergone medical and surgical management to control the intensity, including shunts and nerve simulators. A.R. 641. She did not comment on whether these efforts have been successful. Azevedo confirmed Plaintiff's statement that, when her headaches are severe (three or four days per week), she takes medication and lies in a dark, quiet room for several hours. A.R. 641.

Azevedo also found medically credible and reasonable Plaintiff's reports that her headaches are made worse by activity and that she is unable to fall or stay asleep three to four nights per week. A.R. 642. She noted that Plaintiff's response to treatment has been

fair and that she has shown some improvement, but emphasized that her condition is ongoing and "requires many different forms of management." A.R. 642. Finally, Azevedo concluded that she did not believe Plaintiff "has the stamina and ability to maintain a full time work schedule due to her physical condition being exacerbated by significant physical activity. She is limited in her ability to stand and has trouble thinking clearly at times secondary to conditions and treatment." A.R. 642.

The ALJ considered PA Azevedo's opinion, but gave it no weight because it is inconsistent with (1) the longitudinal medical record; (2) Azevedo's own objective findings; and (3) Plaintiff's reported activities of daily living. A.R. 26. The ALJ also relied on the fact that Azevedo "does not treat [Plaintiff] for her alleged limitations, but rather sees [Plaintiff] for general healthcare." A.R. 26. He further emphasized that Azevedo "is not an acceptable medical source" before concluding that no weight should be given to her opinion. A.R. 26.

Plaintiff contends that the questionnaire was completed jointly by PA Azevedo and Traci Jensen, D.O., and therefore is an opinion from an "acceptable medical source" requiring at least "specific and legitimate reasons" to be rejected. Doc. 11 at 20. Dr. Jensen works with Azevedo at Your Family Medicine and has been treating Plaintiff since at least 2013. *Id.*; Doc. 15 at 9-10; Doc. 16 at 9. Plaintiff argues that Dr. Jensen signed the questionnaire, identifying a signature followed by "D.O." next to PA Azevedo's own signature. Defendant disputes that this signature belongs to Dr. Jensen, noting that it is not labeled and the writing is difficult to decipher. Doc. 15 at 9. Additionally, Defendant notes that the questionnaire was completed in the first person singular and states that "I have been seeing the patient from 1/24/14, but she has been seen in this office as early as 5/17/11." A.R. 642. Because Dr. Jensen began seeing Plaintiff in 2013, Defendant contends, the questionnaire must have been completed solely by Azevedo. *Id.* at 10.

The questionnaire is labeled in the record as "from Stephanie Azevedo, PAC and co-signed by Traci Jensen, D.O.," but it is clear that the ALJ treated it as an opinion

solely from Azevedo.  A.R. 26.  The Court need not resolve this issue, as the ALJ did not provide even "germane reasons" for rejecting the opinion.

### a.  First Reason – Inconsistent with the Longitudinal Record.

The ALJ found Azevedo's opinion that Plaintiff is unable to sustain full-time employment to be inconsistent with the "longitudinal" medical record.  The ALJ does not explain this finding, but cites to several reports in the record.  A.R. 26.  First, he cites a December 2012 appointment report from Dr. Gross, which states that Plaintiff has pseudotumor cerebri, but does not otherwise appear to discuss her condition.  A.R. 334-35.  Moreover, this report precedes Plaintiff's alleged disability onset date.  The ALJ cites a June/July 2013 record from St. Joseph's Hospital which indicates that Plaintiff suffers from headaches, but does not appear to contradict Azevedo's opinion in any way.  A.R. 366, 371.  Similarly, the ALJ cites three 2013 reports from Dr. Freedman, one 2013 and two 2014 reports from Dr. Abdulhamid, and 85 pages of reports from Your Family Medicine.  A.R. 419, 426-27, 435, 477, 479, 483-84, 488-572.  All of these records seem to confirm that Plaintiff experiences frequent and substantial head pain and do not appear to contradict Azevedo's testimony.  Thus, while the ALJ's first reason might be germane, it is not supported by substantial evidence in the record.[2]

### b.  Second Reason – Inconsistent with Azevedo's Findings.

The ALJ found that Azevedo's opinion is inconsistent with her own objective findings.  A.R. 26.  Again, he did not explain his conclusion, but did cite to several pages from the record.  Most of the cited pages, however, do not contain records from Azevedo.  A.R. 367 (record from Dr. Richard Sue), 403 (record from Dr. Caesar Ines), 464 (record

---

[2] Defendant offers several explanations of how Azevedo's opinion is inconsistent with the record.  Doc. 15 at 10.  These explanations are speculation, as the ALJ did not explain his reasoning.  Moreover, Defendant contrasts Azevedo's opinion that Plaintiff has a limited ability to stand and difficulty thinking clearly with physical examinations revealing normal musculoskeletal findings and no cognitive defects.  Doc. 15 at 19.  But Azevedo based her opinion on the fact that activity affects Plaintiff's condition, causing increased head pain.  A.R. 642.  Azevedo does not contend that Plaintiff has cognitive defects or musculoskeletal problems.

from Dr. Derek Schemmel).  The ALJ cited the 85-page exhibit submitted from Your Family Medicine.  A.R. 26 (citing generally Exhibit 18F).  While portions of this exhibit appear to be reports from Azevedo, the ALJ did not identify a single finding from Azevedo which contradicts her ultimate opinion.  Nor did the ALJ discuss the content of Exhibit 18F anywhere else in his opinion.  As a result, the Court is unable to follow the ALJ's reasoning and cannot conclude that it is supported by substantial evidence in the record.

### c.      Third Reason – Inconsistent with Daily Activities.

The ALJ concluded that Azevedo's opinion is inconsistent with Plaintiff's reported activities of daily living.  A.R. 26.  The ALJ did not explain this conclusion, but discussed Plaintiff's activities of daily living elsewhere in his opinion.  As will be discussed in greater detail below, however, the ALJ left out significant reported limitations on Plaintiff's daily activities that are actually consistent with her claim of disability.  For example, while Plaintiff reported that she cares for her children, attends doctor appointments, picks up around the house, and helps her daughter read and do homework, she also stated that she needs to nap or rest between activities.  A.R. 235.  In fact, Plaintiff reported that she needs to nap every day for 2-3 hours.  A.R. 235.  Plaintiff also reported that sometimes her pain requires her to take additional breaks or not do any work at all.  A.R. 235.  During those times, she needs to take medication, lie in darkness, and be quiet.  A.R. 235.  She also states that she rarely goes walking, drives only short distances in familiar areas, and needs assistance from others to complete some tasks.  A.R. 236.  Plaintiff made clear that, while she feels pain every day, she has good days and bad days, and she never knows when a bad day will come.  A.R. 237.  This does not appear to be inconsistent with Azevedo's opinion that Plaintiff is unable to sustain full-time employment.

### d.      Additional Reasons.

In giving no weight to her opinion, the ALJ emphasized that Azevedo is not an acceptable medical source pursuant to SSR 06-3p.  A.R. 26.  This fact may allow the ALJ

to reject Azevedo's opinion for germane reasons, rather than the higher standard applied to medical sources, but it does not independently permit the ALJ to give no weight to Azevedo's opinion.

The ALJ also noted that Azevedo "does not treat [Plaintiff] for her alleged limitations, but rather, sees [Plaintiff] for general healthcare." A.R. 26. Azevedo's opinion states that she sees Plaintiff mostly for insomnia and health maintenance, while Plaintiff's pseudotumor cerebri and occipital neuralgia are treated mostly by neurologists. A.R. 642. Azevedo does indicate that she monitors all of Plaintiff's care. A.R. 642.

Generally, "the opinions of a specialist about medical issues related to his or her area of specialization are given more weight than the opinions of a nonspecialist." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citing 20 C.F.R. § 404.1527(d)(5)). The Ninth Circuit has made clear, however, that a physician's opinion cannot be disregarded simply because it addresses a topic outside his or her expertise. *Lester*, 81 F.3d at 833. As the Ninth Circuit explained:

> the treating physician's opinion as to the combined impact of the claimant's limitations – both physical and mental – is entitled to special weight. . . . An integral part of the treating physician's role is to take into account all the available information regarding all of his patient's impairments – including the findings and opinions of other experts. The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment.

*Id*. Although Azevedo is not a physician, she is a treating physician's assistant, and there are no opinions from treating or examining physicians in the record. Azevedo's office has been seeing Plaintiff since 2011, and thus is likely very familiar with her conditions. The fact that Azevedo sees Plaintiff for general healthcare rather than specifically for her impairments may be a germane reason to give Azevedo's opinion less weight, but it is not a sufficient reason to give her opinion no weight. This is especially true where, as here, there is no other opinion in the record from someone who has examined or treated

Plaintiff. What is more, there is no indication that the state consultative physicians, whose opinions were given partial weight, are neurologists. A.R. 26. Thus the ALJ erred by giving no weight to Azevedo's opinion.

Even if the ALJ commits error in rejecting an opinion from an "other" source, that error will be harmless if the Court can "conclude from the record that the ALJ would have reached the same result absent the error." *Molina*, 674 F.3d at 1115; *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). Because there are no other opinions from treating or examining sources in the record, the Court cannot conclude that the ALJ's wrongful rejection of Azevedo's opinion "was inconsequential to the ultimate nondisability determination in the context of the record as a whole[.]" *Molina*, 674 F.3d at 1122. The ALJ's error was not harmless

### 3. Stephanie and David Webster.

Plaintiff's parents, Stephanie and David Webster, provided opinions about Plaintiff's impairments and subsequent limitations. A.R. 266-82. David Webster, Plaintiff's father, stated that Plaintiff does the best she can to get her children fed and ready for school, but that her boyfriend takes them to and from school if her head hurts too much. A.R. 267. He also noted that she helps with homework and dinner "if she can," but that her parents and boyfriends help care for the children when her pain is too much. A.R. 267. Although he did not note any issues with Plaintiff's ability to care for her personal hygiene, he noted that she has trouble sleeping and needs medication to get at least some sleep. A.R. 267. David noted that Plaintiff's boyfriend helps her with cooking, and David himself helps with laundry and does household chores and yardwork. A.R. 268. According to her father, Plaintiff goes to the children's sporting or school activities "even if she just has to sit and watch," but sometimes needs people to go with her to doctor's appointments or other events. A.R. 270. He also noted that Plaintiff is always in some pain, has trouble bending because her head pounds when she does, and has experienced worsening vision. A.R. 266.

Plaintiff's mother, Stephanie Webster, stated that Plaintiff "has horrible headaches" and spends part of each day in bed or on the couch to relieve her headaches. A.R. 275. Stephanie noted that Plaintiff cares for her children and dogs, but that her boyfriend and parents help with shopping, cleaning, and caring for the children. A.R. 276. She noted that Plaintiff can drive and shop, but takes mostly short trips. A.R. 278. Plaintiff plays with her kids, goes to their events, and visits with friends "when she can," but does not often go places alone. A.R. 279. Plaintiff's mother also emphasized that it takes Plaintiff longer to complete tasks than it used to before her impairment. A.R. 277, 280. Additionally, she noted that stress makes Plaintiff's headaches worse. A.R. 281.

The ALJ considered these reports, found them "informative," but concluded that they are "not persuasive of additional restrictions to the [RFC.]" A.R. 26. As a result, he assigned them "minimal weight." Defendant concedes that the ALJ did not articulate germane reasons for discounting the statements from Plaintiff's parents, but argues that this error was harmless. Doc. 15 at 7. Defendant cites *Molina*, which found that "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se." 674 F.3d at 1117. In reaching this conclusion, *Molina* explained:

> where the ALJ rejects a witness's testimony without providing germane reasons, but has already provided germane reasons for rejecting similar testimony, we cannot reverse the agency merely because the ALJ did not clearly link his determination to those reasons. Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.

*Id.* at 1121 (citation and quotation marks omitted).

Here, the ALJ did not reject the opinions of Plaintiff's parents without comment. Rather, he found their opinions to be "informative," but "not persuasive of additional

restrictions" and gave them "minimal weight." A.R. 26. Thus, this is not a case where the Court can infer that the ALJ's unexplained rejection of lay testimony was actually based on reasoning contained elsewhere in the opinion. More importantly, as will be discussed below, the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's subjective reports of her limitations. As a result, the Court cannot conclude that the ALJ's error "was inconsequential to the ultimate nondisability determination in the context of the record as a whole." *Molina*, 674 F.3d at 1122 (quotation marks omitted).

### C. Symptom Testimony.

In evaluating the claimant's symptom testimony, ALJs must engage in a two-step analysis. The ALJ first must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). If the claimant presents such evidence, the ALJ proceeds to consider "all of the available evidence, including [the claimant's] history, the signs and laboratory findings, and statements from [the claimant]," her doctors, and other persons to determine the persistence and intensity of these symptoms. § 404.1529(c)(1). If there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons that are supported by substantial evidence. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Plaintiff alleges that she is unable to work due to headaches. She testified that she cannot remember the last time she did not have a headache, and that most days she is lying in bed or on the couch, trying not to aggravate her condition. A.R. 49. Plaintiff reported to the ALJ that her headaches "become so severe that [she] can't function" or "concentrate on anything." A.R. 45. She testified that she takes her children to school, helps with homework, and does some light cooking and laundry when she feels well, but that her parents and boyfriend help take care of the children and do most of the house and yard work. A.R. 50-56. Plaintiff also reported that she has insomnia and rarely leaves the house. A.R. 23, 52.

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. A.R. 26. The ALJ reached this conclusion because (1) Plaintiff's subjective complaints are not supported by objective and clinical findings; (2) treatment has been generally effective in relieving Plaintiff's pain and controls her symptoms without side effects; (3) Plaintiff's documented activities of daily living are inconsistent with the degree of limitation she alleges; and (4) Plaintiff's "allegedly disabling impairment was present at approximately the same level of severity prior to the alleged onset date . . . suggest[ing] it would not currently prevent work"; and (5) Plaintiff received unemployment compensation and testified that she actively sought employment after the alleged onset date of her disability. A.R. 24-26.

### 1. Reason 1 – Objective Medical Findings.

While an ALJ may reject a Plaintiff's testimony about the severity of her symptoms, he must "point to specific facts in the record which demonstrate that [the claimant] is in less pain than she claims." *Vasquez*, 572 F.3d at 592 (citation omitted). And as the Ninth Circuit has made clear, if "the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).

The ALJ engages in a five-paragraph discussion of Plaintiff's medical record before ultimately concluding that "these objective findings do not support [Plaintiff's] subjective complaints to the extent alleged." A.R. 25. First, the ALJ summarizes technical findings from an MRI and two CT scans from 2012, as well as radiology imaging of Plaintiff's shunt. A.R. 23. But Plaintiff alleges that her disability began in May 2013, and her shunt was removed in April 2013 due to shunt site pain. A.R. 24. Accordingly, these records do not appear to be relevant. Moreover, the ALJ does not

explain how these results are inconsistent with Plaintiff's testimony. The ALJ appears to be relying on the finding of "no abnormal intracranial fluid collection" and a "stable shunted ventricular system." A.R. 24. But the ALJ already found at step two that Plaintiff suffers from migraines and intracranial hypertension, severe impairments that Plaintiff alleges cause symptoms of varying degrees of severity. A.R. 45.

The ALJ also cites to several medical reports from treating providers. A.R. 24. Many of these reports, like the tests above, predate Plaintiff's alleged disability onset date. A.R. 24 (citing December 2012 and February 2013 medical reports). A June 2013 medical report from Dr. Eross states that Plaintiff's migraine headaches are episodic and under control. A.R. 24 (citing A.R. 293). But this same report also states that Plaintiff's pressure related headaches are occurring every day since her shunt was removed, that they are continuous with flare up, and that her related pain is "moderate to severe." A.R. 292. Dr. Eross also notes that these headaches are accompanied by photophobia, nausea, and blurred or double vision. A.R. 292.

The ALJ cites a September 2013 Brief Battery for Health Improvement 2 test, which evaluated Plaintiff's self-reports of her condition and found Plaintiff's pain complaints to be low and her functional complaints to be average. A.R. 24 (citing A.R. 697). According to the summary from this test, Plaintiff's average functional complaints show "no unusual disabilities or difficulties with activities of daily living," and patients with similar reports "perceive themselves as having a generally intact ability to work and function." A.R. 699. But the ALJ failed to mention and address contradictory statements in this same report. While an ALJ need not address every statement in the record, he cannot pick out only those results which support his position. *See Garrison v. Colvin*, 759 F.3d 995, 1017 & n.23 ("The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits.").

The same report found that test results "suggest a remarkably stoic individual who is enduring an objective medical condition that produces a localized pattern of severe and intolerable pain." A.R. 699. It also noted a high level of defensiveness, which could

indicate "concerns about privacy, an aversion to complaining, or a desire to downplay difficulties." A.R. 699. On a scale of one to ten (ten indicating the "worst pain imaginable"), Plaintiff reported head pain at a level of seven, with peak pain at level eight. A.R. 701. The test results also contained a disclaimer that they were formulated by computer analysis, and while "the computer can form hypotheses about your current condition, [] only your doctor can form a final opinion about what the results of this test actually mean." A.R. 704. Taking this report as a whole, the Court cannot conclude that it constitutes substantial evidence of an inconsistency between the objective medical evidence and Plaintiff's testimony.

## 2. Reason 2 – Effective Treatment.

The ALJ rejected Plaintiff's subjective complaints in part because "the records show [that] treatment has been generally effective in relieving [Plaintiff's] pain." A.R. 25. Additionally, the ALJ noted that Plaintiff "has reported her medication controls her symptoms without causing her side effects." A.R. 25. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Plaintiff acknowledges that some specific records describe her symptoms as being under control, but contends that "generally these records referred to only one facet of her head pain as being in control and generally these periods of relief were not lasting." Doc. 16 at 4.

The ALJ noted that Plaintiff underwent an occipital nerve block in July 2013 and "reported significant pain relief." A.R. 24. But as the ALJ acknowledged, this relief was only temporary. A.R. 24. A report from an August follow-up appointment noted that the occipital nerve block provided Plaintiff with "significant pain relief for roughly 3 weeks. Recently the pain has returned . . . She rates the pain at 4/10 in intensity. The pain varies throughout the day. The pain can occur with other activity or rest. . . . Nothing significantly improves the pain." A.R. 418.

The ALJ found that Plaintiff underwent placement of a trial occipital nerve stimulator in October 2013, which he found to be effective treatment. A.R. 24-25. A follow-up report by Dr. Freedman noted that the trial stimulator resulted in "almost complete pain relief in the posterior aspect of her head with the occipital stimulation." A.R. 24. But as the ALJ acknowledged, Plaintiff reported to Dr. Freedman that she continued to experience "pain in the frontal aspects of her head." A.R. 611. While pain medications "help[ed] improve the pain," it was constant throughout the day. A.R. 611. Moreover, the same report indicates that Dr. Freedman instructed Plaintiff to go to the emergency room on the weekend prior to the follow-up appointment due to a headache in the frontal region of her head which was accompanied by nausea and vomiting. A.R. 611.

Plaintiff underwent placement of a permanent occipital nerve stimulator in November 2014. A.R. 24. The ALJ found that Plaintiff reported a "significant decrease in her pain." A.R. 25. But as the ALJ noted, Plaintiff reported that "the stimulator provides her good relief on the left side but provides no relief on the right side of her head." A.R. 25 (citing A.R. 598). In fact, Plaintiff reported sharp and stabbing pain at an intensity of 7/10 continuous throughout the day. A.R. 598. The ALJ also failed to note that Plaintiff reported severe headaches when lying on her stomach to charge the batteries, "severely debilitating sharp shooting pains extending from the right sided peripheral nerve stimulator just posterior to her right ear and extending down her neck, and continuous chronic headaches post-placement." A.R. 472, 475, 478.

Finally, the ALJ found that Plaintiff's pain symptoms were effectively reduced by medication and multiple lumbar punctures. A.R. 25. The ALJ cited treatment notes from April and May 2014, which indicate respectively that "Percocet has been effective relieving the patient's pain without causing any significant side effects," and medication generally "reduces her pain by 75% and allows her to function" without significant side effects. A.R. 590, 593. Plaintiff contests this finding, arguing that the "cited evidence does not support the ALJ's determination that medication controls Plaintiff's symptoms

as she was reporting severe symptoms despite ongoing medication." Doc. 11 at 14. The Court agrees. Assertions of effective treatment must be considered in context. Plaintiff's pain has multiple causes, including migraines, pseudotumor cerebri, medication overuse, and shunt site pain. A.R. 585. The reports indicating improvement with medication generally address only specific sources of pain and contain continued complaints of pain. A.R. 588. For example, the reports cited above note improvement following medication, but also state that Plaintiff's pain is "constant throughout the day" and has a severity of 5/10. A.R. 588, 591.

An April 2014 report states that Plaintiff was in the emergency room again with a severe headache, and that she had been suffering severe daily headaches. AR. 594. At the emergency room, she underwent a lumbar puncture with an opening pressure of 30 cm of water. A.R. 594. According to Dr. Eross, an opening pressure of 18 cm was too high for Plaintiff. A.R. 341. Plaintiff also had a history of medication overuse, which itself caused additional head pain, with the record indicating that Plaintiff was taking Percocet up to three times per day. A.R. 595, 598. Moreover, while medication partially relieved Plaintiff's pain, increases in dosage did "not significantly improve her headache pain." A.R. 588. While taking medication, Plaintiff was also frequently treated with lumbar punctures, which provided temporary relief. A.R. 583, 588. Days before her hearing, Plaintiff also had a new shunt placed in her head. A.R. 46. These procedures indicate that continued treatment was needed to address continuing symptoms. While the record clearly shows that treatment was effective in providing some relief, it is equally clear that relief was not complete. Thus, there is not substantial evidence in the record to undermine Plaintiff's complaints of severe head pain despite treatment.

### 3. Reason 3 – Daily Activities.

An ALJ may reject a claimant's symptom testimony if it is inconsistent with the claimant's daily activities. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). But "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude

work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Thus, an ALJ may use a claimant's daily activities to discredit symptom testimony only if the claimant "spend[s] a *substantial part* of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (emphasis added); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").

The ALJ found that Plaintiff's documented activities of daily living "fail to support the level of limitation she alleges stem from her impairments[,]" and the Plaintiff's "reports are inconsistent with her testimony." A.R. 25. Specifically, the ALJ relied on a daily activity report stating that Plaintiff cares for her two small children, including preparing meals, helping with homework, and bathing them. A.R. 25. The ALJ also relied on statements suggesting that Plaintiff picks up around her house, does laundry, drives independently, grocery shops up to four times per month, volunteers at her daughter's school, attends sporting events, and is capable of lifting 30-40 pounds. A.R. 25. But the ALJ did not find that Plaintiff spent a substantial part of her day engaged in these activities. What is more, he did not explain how they are inconsistent with Plaintiff's claimed limitations, but simply concluded that these "documented activities of daily living [] fail to support the level of limitation she alleges." A.R. 25.

The daily activity reports on which the ALJ relied actually document significant limitations consistent with Plaintiff's symptom testimony. First, Plaintiff reported that she cares for her children, attends doctor appointments, picks up around the house, cooks dinner, and reads with her children, but that she needs to take breaks to rest or nap, and only does work around the house "as much as [she] can." A.R. 235. More specifically, she reported that her pain symptoms may cause her to need more breaks or sometimes to refrain from engaging in the identified activities at all. A.R. 235. Additionally, "when a headache strikes, [she] need[s] to try to take medication, [she] tend[s] to want to be in

darkness and need[s] quiet, [and] if the dizziness has kicked in [she] need[s] to lay down." A.R. 235. She also reported that she can do light cleaning around the house for a few hours at a time, but the bending over, amount of work, and smell of cleaning supplies can be too much for her head. A.R. 235. She stated that she does light cooking for up to an hour every day, but that she only drives short distances and in areas that she is familiar with because of problems with her eyesight. A.R. 236. She also reported that she requires a two or three hour nap every day, and indicated that she needs assistance at times to carry out her chores and other activities. A.R. 236. Plaintiff further explained that she has good days and bad days, but feels pain from her headaches pretty much every day. A.R. 237. She added that she never knows when she will need to go to the emergency room or when a bad headache will come, which has caused her to lose jobs due to reliability issues. A.R. 237.

The Court concludes that the ALJ's daily activities conclusion is not supported by substantial evidence in the record. While the Brief Battery for Health Improvement 2 test stated that Plaintiff did not report any "unusual disabilities or difficulties with activities of daily living," it did not provide any additional explanation of what questions were asked of Plaintiff or what response she gave to generate this conclusion. This statement, without more, does not constitute substantial evidence of inconsistencies between Plaintiff's testimony and her reported daily activities. The Court accordingly finds that the ALJ erred in discounting Plaintiff's symptom testimony based on her daily activities.

**4.  Condition Existed Prior to Alleged Onset.**

The ALJ concluded that Plaintiff's "allegedly disabling impairment was present at approximately the same level of severity prior to the alleged onset date. The Fact that the impairment did not prevent [Plaintiff] from working at that time strongly suggests that it would not currently prevent work." A.R. 26.

Defendant argues that Plaintiff did challenge this reason, or the following reason, in her opening brief, thus waiving any challenges to them. Doc. 15 at 6. It is true that an issue not raised in an opening brief is waived. *See Bray v. Comm'r of Soc. Sec. Admin.*,

554 F.3d 1219, 1226 n.7 (9th Cir. 2009). But Plaintiff's opening brief identifies and challenges "two main reasons" given by the ALJ for rejecting Plaintiff's testimony. Doc. 11 at 11. Specifically, she argues that the ALJ erred by concluding that (1) Plaintiff's daily activities were not as severely limited as she alleged and (2) the objective and clinical evidence did not support her allegation of disability. *Id.* It appears that she may have considered all other reasons, including the finding that her impairment existed before the alleged disability onset date, to be sub-arguments falling within the more generalized categories above.

Moreover, it is not clear that the ALJ considered this to be an independent reason for rejecting Plaintiff's testimony. He noted that evidence of Plaintiff's impairment before the alleged disability onset date "strongly suggests" that Plaintiff could currently work with her impairment. A.R. 26. This conclusion is not included in the section of the ALJ's opinion discussing the credibility of Plaintiff's testimony, but rather follows the ALJ's assessment of the medical and third-party lay opinions in the record. A.R. 26. As a result, it is not clear whether this is simply a general factor cited by the ALJ in support of his overall finding of no disability, or a specific factor used to find Plaintiff's testimony not credible.

But even if Plaintiff has waived this issue, the Court must determine if the ALJ's error in relying on the first three reasons for rejecting Plaintiff's testimony was harmless. The Ninth Circuit has held that an error is harmless "[s]o long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion[.]" *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (quotation marks omitted and alterations incorporated). Thus, the Court must consider "whether the ALJ's decision remains legally valid," or, stated differently, "whether the ALJ's underlying decision remains supported." *Id.* at 1162-63 & n.4.

An ALJ's rejection of a claimant's symptom testimony must be based on clear and convincing reasons supported by substantial evidence. *Vasquez*, 572 F.3d at 591. A

reason which is unpersuasive on its face will not be found to meet this standard, even if it is not specifically challenged by Plaintiff. Substantial evidence showing that a claimant's impairment has remained constant before and after the alleged disability onset date, and that she was able to work with the impairment prior to the onset date, will support a finding that a claimant's testimony of disability is not credible. *See Gregory v. Bowen*, 844 F.2d 664, 666-67 (9th Cir. 1988). But here the ALJ did not explain how he determined that Plaintiff's impairment was at the same level of severity before and after the alleged onset date, and he did not cite the record to support his conclusion.

The ALJ found that Plaintiff had engaged in substantial gainful employment activity between May 2012 and April 2013. A.R. 21. Plaintiff states in her opening brief that she was terminated from her job in May 2013 when she was not permitted leave to undergo surgery to remove her cistoperitoneal shunt. Doc. 11 at 3. Neither Defendant nor the ALJ appear to dispute this fact. Thus, Plaintiff contends that "her disability began the date she was fired from her job due to necessary treatment." *Id.* Because it appears that Plaintiff was laid off as a direct result of her impairment, the ALJ's conclusion that Plaintiff was able to work with her impairment is contradicted by evidence in the record.

### 5.        Reason 5 – Unemployment Compensation.

The ALJ also found that Plaintiff received unemployment compensation and sought employment after the alleged disability onset date, suggesting that Plaintiff believed herself "able to engage in work activity." A.R. 26. The Ninth Circuit has found that "[c]ontinued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working." *Ghanim*, 763 F.3d at 1165. But the Ninth Circuit has not found that continued receipt of unemployment benefits is a clear and convincing reason, sufficient on its own, to reject a claimant's testimony. What is more, *Ghanim* noted that the claimant declined unemployment benefits within about a month of his onset date and found that, "rather than undercut his claim of disability, this prompt refusal of unemployment benefits supports it." *Id.* Here, the record shows that Plaintiff received unemployment benefits

only for the fourth quarter of 2013. A.R. 196, 200. She did not receive unemployment in 2014. A.R. 200.

Additionally, the Ninth Circuit has held that receipt of unemployment benefits will undermine a claimant's alleged inability to work fulltime only when the record shows that the claimant held himself out as available for full-time work. *Carmickle*, 533 F.3d at 1161-62 ("First, while receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime, the record here does not establish whether Carmickle held himself out as available for full-time or part-time work. Only the former is inconsistent with his disability allegations. Thus, such basis for the ALJ's credibility finding is not supported by substantial evidence.") (citations omitted).

The hearing record reflects that Plaintiff sought work after she had recovered from her May 2013 surgery. A.R. 45. She stopped searching for work in December 2013, the same time that she terminated her unemployment compensation. A.R. 45. She testified that she was trying to find something that would allow her to work without causing headaches, but was unable to find anything. A.R. 45. Again, the record does not reflect whether Plaintiff sought full-time or part-time work. Where the uncontested record shows that Plaintiff was laid off as a direct result of her impairment, and was unable to find work that would accommodate her impairment, the Court cannot conclude that Plaintiff's brief and unsuccessful attempt to find work constitutes a clear and convincing reason for rejecting her testimony.

## V.  Remedy.

Where an ALJ fails to provide adequate reasons for rejecting evidence of a claimant's disability, the Court must credit that evidence as true. *Lester*, 81 F.3d at 834. An action should be remanded for an immediate award of benefits when the following factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) the ALJ would be required to find the claimant disabled if the improperly

discredited evidence were credited as true. *Garrison*, 759 F.3d at 1020 (internal citations omitted). Courts may "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1020. The relevant factors require the Court to remand for an award of benefits.

Considering the first factor, the Court cannot conclude that the record is complete. There are no medical opinions from treating or even examining sources in the record, and the ALJ did not give any medical source opinion more than "partial weight." A.R. 26. Where it is clear that Plaintiff has seen several different physicians over a period of years, there is utility in further developing the record so that it contains medical opinions as to Plaintiff's limitations.

Moreover, it appears that the ALJ's presentation of hypotheticals to the vocational expert and the vocational expert's responses were completed off the record. A.R. 59. Because the record is incomplete, the Court is left with doubt as to whether Plaintiff is disabled, and cannot conclude that the ALJ would be required to find the claimant disabled if the improperly discredited evidence were credited as true.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is vacated and this case is remanded for a new hearing consistent with this opinion. The Clerk shall enter judgment accordingly and terminate this case.

Dated this 24th day of April, 2017.



_____
David G. Campbell
United States District Judge